**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**J. R. THARPE TRUCKING COMPANY,
INC.,**

      **Plaintiff,**

      v.                                                                    Civil Action No. 3:24cv422

**PRINCE EDWARD COUNTY, VIRGINIA,**
*et al.,*

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Prince Edward County, Virginia, Crystal M. Hensley, and Donna B. Nunnally's (collectively, the "Defendants") Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) (the "Motion to Dismiss" or "Motion"). (ECF No. 26.) Plaintiff J.R. Tharpe Trucking Company, Inc. ("Tharpe") responded in Opposition to the Motion, (ECF No. 30), and Defendants replied, (ECF No. 32).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will grant the Motion.

## I. Factual and Procedural Background

A. **Factual Background**[1]

Plaintiff Tharpe is a Virginia trucking company. (ECF No. 21 ¶ 3.) Defendant Prince Edward County, Virginia ("Prince Edward County" or the "County") "is a political subdivision of the Commonwealth of Virginia that is authorized to impose, assess, collect, and enforce local taxes, including personal property taxes." (ECF No. 21 ¶ 4.) Defendant Crystal M. Hensley is the Commissioner of Revenue for Prince Edward County. (ECF No. 21 ¶ 5.) In this role, Commissioner Hensley "assess[es] personal property for tax purposes." (ECF No. 21 ¶ 6.) Defendant Donna B. Nunnally is the Treasurer for Prince Edward County. (ECF No. 21 ¶ 7.) In this role, she collects and enforces local taxes. (ECF No. 21 ¶ 8.)

This case arises out of the Commonwealth of Virginia's "attempt[s] to collect certain taxes from Tharpe relating to its commercial personal property [specifically, vehicles] used in interstate commerce." (ECF No. 21 ¶ 1.) Tharpe challenges the legality of these tax collection attempts, contending that its "vehicles are subject to property taxation in the state where [they] are registered, Oklahoma." (ECF No. 21 ¶ 138.) Tharpe's Amended Complaint states that if it "is found to owe any taxes to [Prince Edward] County at the conclusion of [its multiple] legal proceedings relating to the County's tax assessment, Tharpe has the financial means to pay any such taxes." (ECF No. 21 ¶ 78.)

---

[1] In considering the Motion, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Tharpe. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12 motion to dismiss into one for summary judgment] so long as the authenticity of these documents is not disputed.")

### 1. On February 29, 2024, Tharpe Files an Appeal of its Virginia Personal Property Tax Assessments for Tax Years 2020–2024 with Prince Edward County's Commissioner of Revenue Crystal Hensley

"Tharpe is a motor carrier engaged in the business of hauling freight in both interstate and intrastate commerce", and "operates a fleet of vehicles with a gross vehicle weight of 10,000 pounds or more" for this purpose. (ECF No. 21 ¶¶ 16–17.) "In 2022, Tharpe titled and registered its vehicles and trailers in the State of Oklahoma." (ECF No. 21 ¶ 21.) "At the time of registration in Oklahoma, Tharpe paid the registration fees which included the equivalent of a personal property tax." (ECF No. 21 ¶ 26.)

On an unspecified date, Tharpe received from Prince Edward County's Commissioner of Revenue, Commissioner Hensley, "a Return of Tangible Personal Property . . . with a due date of April 1, 2023." (ECF No. 21 ¶¶ 5, 22.) The Return of Tangible Personal Property directed "Tharpe to 'report all personal property owned and garaged, stored, or parked in [Prince Edward] County as of January 1, 2023.'" (ECF No. 21 ¶ 23.)

"On April 1, 2023, Tharpe filed the Return of Tangible Personal Property with the Prince Edward [County] Commissioner indicating that [its] vehicles were disposed of on various dates in 2022." (ECF No. 21 ¶ 24.) This filing "reflected the change in title and registration for Tharpe's vehicles from Virginia to Oklahoma." (ECF No. 21 ¶ 25.)

On October 11, 2023, Tharpe's counsel contacted Prince Edward County's counsel via letter "requesting a correction in the tax assessment for 2023 indicating that the County was not the tax situs for the vehicles pursuant to Code of Virginia § 58.1-3511."[2] (ECF No. 21 ¶ 37.)

---

[2] Virginia Code § 58.1-3511 provides, in pertinent part:

> A. The situs for the assessment and taxation of tangible personal property, merchants' capital and machinery and tools shall in all cases be the county, district, town or city in which such property may be physically located on the tax day. **However, the situs for**

"Between October 2023 and January 2024, Tharpe . . . provided additional documents and information requested by the County to support Tharpe's dispute of the tax assessment." (ECF No. 21 ¶ 38.) "In a Personal Property Tax Statement for Tax Year 2023, Ms. Nunnally, the County Treasurer, stated that Tharpe owed a tax due of $5,770.40 with a due date December 5, 2023." (ECF No. 21 ¶ 39.)

"On February 27, 2024, Tharpe received another document from the County regarding its personal property tax assessment for the year 2023." (ECF No. 21 ¶ 41.) This document "stated that Tharpe owed $482,406.60 in 2023 personal property taxes due by March 25, 2024." (ECF No. 21 ¶ 41.) "In the first half of February, 2024, Tharpe received two documents from the County purporting to be a personal property tax assessment for the tax year 2024 that reflected missing and/or conflicting information." (ECF No. 21 ¶ 40.)

---

**purposes of assessment of motor vehicles, travel trailers, boats and airplanes as personal property shall be the county, district, town or city where the vehicle is normally garaged, docked or parked**; except, (i) the situs for vehicles with a weight of 10,000 pounds or less registered in Virginia but normally garaged, docked or parked in another state shall be the locality in Virginia where registered; and (ii) if the owner of a business files a return pursuant to § 58.1-3518 for any vehicle with a weight of 10,000 pounds or less registered in Virginia and used in the business with the locality from which the use of such vehicle is directed or controlled and in which the owner's business has a definite place of business, as defined in § 58.1-3700.1, the situs for such vehicles shall be such locality, provided such owner has sufficient evidence that he has paid the personal property tax on the business vehicles to such locality. Any person domiciled in another state, whose motor vehicle is principally garaged or parked in this Commonwealth during the tax year, shall not be subject to a personal property tax on such vehicle upon a showing of sufficient evidence that such person has paid a personal property tax on the vehicle in the state in which he is domiciled. **In the event it cannot be determined where such personal property, described herein, is normally garaged, stored or parked, the situs shall be the domicile of the owner of such personal property.**

Va. Code § 58.1-3511 (emphasis added).

4

On February 29, 2024, due to "the haphazard and conflicting nature of the documents and information that Tharpe received from the County for its 2024 personal property tax assessment", and also due to "Tharpe's unresolved dispute" of its 2023 tax assessment, "Tharpe filed an appeal of the assessment[s]" for tax years 2020–2024[3] with Commissioner Hensley, the Commissioner of Revenue for Prince Edward County. (ECF No. 21 ¶¶ 5, 42; ECF No. 21-9, at 1–2.) "On March 11, 2024, [Commissioner] Hensley denied Tharpe's appeal." (ECF No. 21 ¶ 43.)

### 2. Tharpe Appeals Commissioner Hensley's Denial with Virginia's Tax Commissioner

Two weeks after Commissioner Hensley's denial, on March 25, 2025, Tharpe appealed this "decision with the Tax Commissioner for the Commonwealth of Virginia." (ECF No. 21 ¶ 44 (citing ECF No. 21-9).) "In that appeal, Tharpe asserted that the County, [Commissioner] Hensley, and Ms. Nunnally had assessed a personal property tax in excess of what federal and state law allow", and had also "assessed a personal property tax on property that was not in their jurisdiction." (ECF No. 21 ¶¶ 47–48.)

---

[3] Although the Amended Complaint is ambiguous as to which specific tax year assessments Tharpe appealed to Commissioner Hensley, Tharpe writes in Exhibit I to the Amended Complaint, (its appeal of Commissioner Hensley's denial to the Virginia Tax Commissioner) that it appealed the personal property tax for the "Tax Period(s) or Taxable Year(s)" "2020–**2023**", but then separately writes that it appealed "[p]ersonal [p]roperty [t]ax assessed on business vehicles" for the tax periods "2020–**2024**." (ECF No. 21-9, at 1–2 (emphasis added).) Considering the Amended Complaint and its exhibits together, and reading these documents in the light most favorable to Tharpe, the Court reads Tharpe's allegations to state that it appealed to Commissioner Hensley, and then later to the Virginia Tax Commissioner, its personal property tax assessments for the tax periods 2020–2024.

### 3. To Facilitate its Collection of Tharpe's Taxes, Prince Edward County Directs Tharpe's Bank to Freeze Tharpe's Account

During the pendency of this appeal, and without any warning, on April 22, 2024 "the County directed TowneBank, N.A. ('TowneBank') to freeze Tharpe's" TowneBank account. (ECF No. 21 ¶¶ 56–57.)  The next day, on April 23, 2024 "Ms. Nunnally issued a letter attempting to justify" the freeze, stating that "the collection of taxes assessed against Tharpe was jeopardized by delay", (the "April 23, 2024 Letter").  (ECF No. 21 ¶ 58 (citing ECF No. 21-10).)  Tharpe disagrees with this conclusion.  (ECF No. 21 ¶ 62.)  "[T]he County and/or Ms. Nunnally" also sent this letter "to TowneBank (and possibly to others) to support the County's request for Tharpe's bank account to be frozen."  (ECF No. 21 ¶ 59; *see also* ECF No. 21 ¶ 80.)

The April 23, 2024 Letter bears the headline "Treasurer's Finding That Collection Would Be Jeopardized By Delay."  (ECF No. 21-10, at 1.)  In relevant part, Ms. Nunnally lists the following four assertions in the April 23, 2024 Letter to support her finding that collection would be jeopardized by delay:

1. Tharpe directed its drivers to keep Tharpe's vehicles at their personal places of residence on January 1, 2024, in an attempt [to] conceal their whereabouts from Prince Edward County.

2. Tharpe has repeatedly threatened to leave the County if compelled to pay taxes.  It also changed its reported principal office and address in the State Corporation Commission database once the Commissioner of the Revenue explained how the situs rule applied to Tharpe's local business taxes.

3. Tharpe has repeatedly advanced frivolous theories that it is not obligated to pay local business taxes.

4. Tharpe has threatened litigation over previous years' taxes in an attempt to dissuade collection of taxes currently due.

(ECF No. 21-10, at 1.)  Tharpe vehemently disputes these four assertions.  (*See* ECF No. 21 ¶¶ 63–75.)

6

To unfreeze its bank account, Tharpe later sent an initial payment of "more than $120,601.65" to Prince Edward County and entered into a payment plan. (ECF No. 21 ¶ 82.) "Under the terms of the payment plan, Tharpe was required to make another three payments of $120,601.65 each to the County" in May, June, and July 2024. (ECF No. 21 ¶ 84.) Tharpe asserts that all three Defendants "are treating [it] Tharpe differently from other taxpayers who have challenged tax assessments, including by freezing its bank account without following the statutory basis for doing so, by making false findings after improperly freezing assets, and without any prior notice, warning, due process, or justification." (ECF No. 21 ¶ 85.)

### 4. **Pending State Litigation**[4]

"On May 10, 2024, while [Tharpe's] administrative appeal remained pending with the Tax Commissioner, the County filed suit in the Circuit Court for Prince Edward County, Virginia (the 'State Court Action'), attempting to collect the disputed tax." (ECF No. 21 ¶ 88.) On June 10, 2024, the Chief Judge of the Prince Edward County Circuit Court issued an order recusing all judges in the Prince Edward County Circuit Court from the State Court Action. (ECF No. 21-2, at 1; *see also* ECF No. 21 ¶ 93.) This order states that "the Chief Justice of the Supreme Court of

---

[4] Tharpe asks the Court to disregard the official public records that Defendants attach to their filings, arguing that such attachments are inappropriate for the Court to consider at this procedural juncture. (*See* ECF No. 30, at 2–3.) The Court rejects this argument. Pursuant to Federal Rule of Evidence 201, courts may take judicial notice of an official public record at the motion to dismiss stage without converting the motion into one for summary judgment. *See Witthohn*, 164 F. App'x at 396–97 (per curiam) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12 motion to dismiss into one for summary judgment] so long as the authenticity of these documents is not disputed.") (citing with approval *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va.1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint.)); *see* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Tharpe does not challenge the authenticity of these documents. (*See generally*, ECF No. 30.)

7

Virginia [] will take the necessary action to secure a judge to preside in this matter." (ECF No. 21-2, at 1.) As a result of this recusal, of the day the Amended Complaint was filed, (August 7, 2024), no judge had been "appointed to preside in the State Court Action." (ECF No. 21 ¶ 94.) Public records indicate, however, that a judge has since been assigned to the State Court Action. (*See, e.g.*, ECF No. 36-2, at 1 (in Tharpe's October 29, 2024 appeal filed with Commissioner Hensley, Tharpe notes that "Judge Garrett" is currently presiding over the State Court Action.))

On June 3, 2024, four days before it initiated this federal action, (*see* ECF No. 1), Tharpe filed its Answer and Counterclaims in the State Court Action. (ECF No. 27-2, at 3.) Like the Amended Complaint at bar, Tharpe's allegations in its Counterclaims in the State Court Action (1) challenge Prince Edward County's assessment of taxes against it and (2) contend that the County unjustly froze its bank account and unfairly required it to later pay to unfreeze its account. (*See* ECF No. 27-2, at 8–24.) Large portions of the Counterclaims are either substantially similar to or identical to the Amended Complaint. (*Compare* ECF No. 21 *with* ECF No. 27-2.)

Prince Edward County later moved for summary judgment in the State Court Action, and Circuit Court Judge Michael T. Garrett held a hearing on the motion on October 22, 2024. (*See* ECF No. 36-1, at 1.) At this hearing, Judge Garrett declined to rule on the motion out of concern that a ruling could contradict a future ruling from the Department of Taxation. (ECF No. 36-1, at 100:19–101:2, 103:16–19 ("I'm concerned about inconsistent determinations, though. There might be an issue, an argument that the tax department would be foreclosed based upon this Court's ruling if I were to go forward on the motion for summary judgment . . . . I'm going to find today that it's premature to rule on this, given the appeal. I think the Department of Taxation needs to sort through all this.").)

**B.     Procedural Background**

On June 7, 2024, Tharpe filed its Complaint in this action. (ECF No. 1.) On August 7, 2024, Tharpe filed its Amended Complaint. (ECF No. 21.) On August 21, 2024, Defendants filed the Motion to Dismiss. (ECF No. 26.) Tharpe responded in opposition, (ECF No. 30), and Defendants replied, (ECF No. 32).

On October 8, 2024, Defendants filed a letter with the Court informing it that "[t]he Tax Commissioner of the Commonwealth of Virginia has issued a 'Determination' in the ostensible 'appeal' that is referenced in Paragraphs 44–56, and 92 of the Amended Complaint." (ECF No. 34, at 1.) Paragraphs 44–56 and 92 of the Amended Complaint refer to Tharpe's appeal of Commissioner Hensley's decision with the Tax Commissioner for the Commonwealth of Virginia. (*See* ECF No. 21 ¶¶ 44–56, 92.) Defendants attached a copy of the Determination to their letter. (*See* ECF No. 34-1.) On January 13, 2025, the Court issued an order requesting "briefing as to how the Determination impacts the claims in this case." (ECF No. 35, at 1.) Pursuant to this order, Defendants timely filed their position on January 22, 2025, and Tharpe timely filed its position on February 10, 2025. (ECF Nos. 36, 37.)

In its Determination, the Tax Commissioner wrote that "[t]here is no indication that a local appeal has ever been filed with the County. Accordingly, if [Tharpe] continues to disagree with the assessment for the 2023 tax year, it may file a local appeal under Virginia Code § 58.1-3980 or § 58.1-3983.1." (ECF No. 34-1, at 3.) The Determination further stated that if Tharpe "is also attempting to seek a refund of [business tangible personal property] taxes erroneously paid for the 2020 through 2023 tax years based on an improper tax rate, [Tharpe] should first make such request in accordance with the County's local ordinances and the Commissioner of the Revenue office's filing requirements." (ECF No. 34-1, at 4.)

Pursuant to the Determination and consistent with a suggestion from Judge Garrett at the October 22, 2024 hearing in the State Court Action, on October 29, 2024 Tharpe filed a renewed appeal of its tax assessments with Commissioner of Revenue Crystal Hensley. (ECF No. 36-2, at 1 ("As Judge Garrett suggested during the October 22, 2024 hearing in the [State Court Action], Tharpe submits this appeal of the personal property tax assessments issued against Tharpe for the years 2020 through 2024. This appeal is being filed pursuant to [] § 58.1-3983.1.").) On January 22, 2025, Prince Edward County "declined" this renewed appeal, and on February 3, 2025, Tharpe again appealed the County's "finding with the Tax Commissioner." (ECF No. 37, at 3.)[5] This appeal remains pending. (ECF No. 37, at 3.)

In the Amended Complaint, Tharpe asserts six causes of action:

| | |
|---|---|
| **Count I:** | **Declaratory Judgment – Unlawful Levy of Tax in Violation of 49 U.S.C. § 14502** (against Prince Edward County and Commissioner Hensley and Ms. Nunnally in their official capacities) (contesting levy of personal property taxes on Tharpe's vehicles from "at least as far back as 2020" through 2024). |
| **Count II:** | **Declaratory Judgment – Unlawful Levy of Personal Property Taxes for Tax Years 2023 and 2024 in Violation of Code of Virginia § 58.1-3511** (against Prince Edward County and Commissioner Hensley and Ms. Nunnally in their official capacities) (contending that "Tharpe's vehicles are subject to property taxation in the state where its vehicles are registered, Oklahoma."). |
| **Count III:** | **Violation of Due Process Under the United States Constitution and the Virginia Constitution, Per 42 U.S.C. § 1983** (against Prince Edward County and Ms. Nunnally in her official capacity) (contending that Ms. Nunnally's decision to freeze Tharpe's bank account to facilitate the County's collection of taxes violated Tharpe's federal and state due process rights). |

---

[5] Because it is a public record, the Court takes judicial notice of Tharpe's February 3, 2025 appeal to the Tax Commissioner. *See Witthohn*, 164 F. App'x at 396–97.

| | |
|---|---|
| **Count IV:** | **Violation of Equal Protection of the Law Under the United States Constitution and the Virginia Constitution, Per 42 U.S.C. § 1983** (against Prince Edward County and Ms. Nunnally in her official capacity) (contending that "the County and Ms. Nunnally are intentionally treating Tharpe differently from other taxpayers who have challenged tax assessments, including by unlawfully freezing Tharpe's [bank] account."). |
| **Count V:** | **Defamation and Defamation *Per Se*** (against Ms. Nunnally in her individual capacity) (contending that Ms. Nunnally's April 23, 2024 Letter contained "false and defamatory statements about Tharpe purporting to find that the collection of taxes would be jeopardized by delay.") |
| **Count VI:** | **Defamation and Defamation *Per Se – Respondeat Superior*** (against Defendant Prince Edward County) (contending that the County is liable for Ms. Nunnally's April 23, 2024 Letter, which Tharpe contends is defamatory). |

(ECF No. 21, at 13–27.)

## II.  Standard of Review

### A.    Rule 12(b)(1)

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to Rule 12(b)(1) can attack subject-matter jurisdiction in two ways.  *See Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams*, 697 F.2d at 1219).  Defendants' Motion attacks the Amended Complaint on its face, asserting that it fails to state a claim upon which subject-matter jurisdiction can lie.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).  "When a defendant makes [such] a facial

11

challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219).[6]

### III.  Analysis

Defendants move to dismiss on the ground that, *inter alia*, the Court lacks subject matter jurisdiction over Tharpe's claims because they are not ripe. (ECF No. 27, at 17.) For the reasons articulated below, the Court agrees that Counts I through IV must be dismissed on ripeness grounds. The Court will decline to exercise supplemental jurisdiction over Tharpe's remaining Virginia law claims, (Counts V and VI).

#### A.   Legal Standard:  Ripeness

"The doctrine of ripeness arises from the case or controversy requirement of Article III." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022). For that reason, it "presents the threshold question whether a claim is justiciable." *Id.* "The plaintiff bears the burden of establishing ripeness." *Id.*

---

[6] Alternatively, and not relevant here, a Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219); *see also Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citing *Adams*, 697 F.2d at 1219). In such a case, because a party challenges the court's "'very power to hear the case' . . . the trial court is free to weigh the evidence to determine the existence of its jurisdiction." *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "'[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Mortensen*, 549 F.2d at 891); *see also Adams*, 697 F.2d at 1219.

"While standing involves the question of *who* may sue, ripeness involves *when* they may sue." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) (internal quotation marks, brackets, and citation omitted) (emphasis in original). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)); *see South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013)); *accord Trump v. New York*, 592 U.S. 125, 131 (2020). And "[w]here an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." *Doe*, 713 F.3d at 758.

Consistent with this principle, "federal ripeness doctrine . . . counsels against adjudication of questions that might be altered or dissolved by further action in the state court." *McGhee v. Director, Dep't of Mental Health & Hygiene*, No. 97–2588, 1998 WL 403329, at *2 (4th Cir. July 7, 1998) (quotation marks and citation omitted) (brackets removed) (federal case not ripe where plaintiff's appeal of administrative law judge decision remained pending in Maryland state court, rendering plaintiff's injury "contingent upon future events.")

"In reviewing a ripeness claim, [courts] consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Deal v. Mercer*

13

*Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (internal quotation marks omitted); *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (describing the considerations as "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.").

At bottom, "the purpose of the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *South Carolina*, 912 F.3d at 730 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)); *see also McGhee*, 1998 WL 403329, at *2.

### B.     Tharpe Fails to Establish That Claims in Counts I–IV Are Ripe

Here, Counts I through IV all stem from Defendants' assessment of Tharpe's personal property taxes and the accuracy of these assessments. To determine whether a claim is ripe, a Court must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Deal*, 911 F.3d at 191. Relevant considerations also include (3) "whether judicial intervention would inappropriately interfere with further administrative action" and (4) "whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n*, 523 U.S. at 733. The Court will address each factor seriatim. The Court concludes that Tharpe's position cannot be sustained because two preexisting actions related to Tharpe's claim at bar would impact this Court's ultimate decision on the merits.

First, turning to the fitness of the issues for judicial decision, the parties' dispute regarding whether Defendants improperly taxed Tharpe's vehicles is currently being considered in the State Court Action. (ECF No. 21 ¶ 88; *see also* ECF No. 27-2, at 3.) Tharpe also has a pending administrative appeal before Virginia's Tax Commissioner. (ECF No. 37, at 3.) Notably, the court in the State Court Action paused its ruling on a motion for summary judgment to avoid producing an inconsistent ruling with the one that will result from Tharpe's pending administrative appeal. (ECF No. 36-1, at 100:19–101:2, 103:16–19.) Although Tharpe broadly contends that the claims in this case are not contingent on future uncertainties, (*see* ECF No. 30, at 18), the Court cannot credit this assertion where a ruling in this action risks directly conflicting with a ruling in the State Court (which predates this action), and with the currently pending administrative appeal before the Tax Commissioner. Both proceedings, like this action, are highly contingent on the propriety of the County's tax assessments against Tharpe. Tharpe's claims in this action could be resolved by either proceeding. As a result, Tharpe's claims are unfit for judicial review at this juncture. *See McGhee*, 1998 WL 403329, at *2 (internal quotation marks omitted) (federal case not ripe where plaintiff's appeal of administrative law judge decision remained pending in Maryland state court, rendering plaintiff's injury "contingent upon future events."); *see also Doe*, 713 F.3d at 758. Thus, the first factor—fitness for judicial review—weighs against deeming Tharpe's claims ripe.

Second, the Court turns to hardship to the parties if the Court were to withhold consideration at this time. Tharpe, who bears the burden to establish ripeness, fails to identify any hardship that would befall it were the Court to withhold consideration of its claims at this time. In its opposition, Tharpe offers the conclusory assertion that "the hardship [it] would face if the Court declined to adjudicate its claims would be considerable." (ECF No. 30, at 18.)

Tharpe fails, however, to elaborate on this point. In contrast, Tharpe alleges in its Amended Complaint that if it "is found to owe any taxes to [Prince Edward] County at the conclusion of [its multiple] legal proceedings relating to the County's tax assessment, Tharpe has the financial means to pay any such taxes." (ECF No. 21 ¶ 78.) This suggests that Tharpe is unlikely to experience financial hardship if the Court were to withhold consideration at this time. Furthermore, Tharpe's general interest in receiving "a favorable outcome in federal court . . . sooner than later" is insufficient to constitute hardship. *McGhee*, 1998 WL 403329 at *3. This prong "would be meaningless if injury to the general interest in prompt relief, an interest surely shared by all plaintiffs, constituted the kind of hardship that trumped every other consideration and required immediate resolution of this case." *Id.* at *3.

  Third, the Court concludes that judicial intervention would inappropriately interfere with further administrative action. As explained above, the outcome of this action risks producing a judgment that could be inconsistent with a ruling in the pending administrative appeal before the Tax Commissioner. *See South Carolina*, 912 F.3d at 730; *see also McGhee*, 1998 WL 403329, at *2.

  Fourth and finally, neither side presents a position about whether the Court would benefit from further factual development of the issues presented. (*See generally*, ECF Nos. 27, 30, 32.) This factor also weighs in Defendants' favor, as the Court would benefit from future rulings in Tharpe's appeal before the Tax Commissioner and in the State Court Action.

  Thus, considering all relevant factors and considering all well-plead factual allegations in the light most favorable to Tharpe, the Court concludes that Counts I through IV must be

dismissed for lack of jurisdiction because they are not yet ripe.[7]  This Court need not be the place where factual development occurs, especially when considering proper use of judicial resources.

### C. The Court Will Decline to Exercise Supplemental Jurisdiction Over Tharpe's Remaining State Law Claims (Counts V and VI)

The two remaining counts allege state law defamation claims over which the Court does not have original jurisdiction.[8]  The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").  The Court may consider the remaining state law claims only if it exercises supplemental jurisdiction.  Because all relevant factors weigh against exercising supplemental jurisdiction, the Court will decline to do so here.  *See, e.g.*, *Ruttenberg v. Jones*, 603 F. Supp. 2d 844, 873 (E.D. Va. 2009), *aff'd*, 375 F. App'x 298 (4th Cir. 2010) (declining to exercise supplemental jurisdiction over state law claims after dismissing all federal claims in § 1983 action).

#### 1. Legal Standard: Supplemental Jurisdiction After Federal Claims Are Dismissed

Federal district courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as a federal claim.  28 U.S.C. § 1367(a).  A district court,

---

[7] Furthermore, because Tharpe is already appealing its tax assessments before the Tax Commissioner and in the State Court Action, "basic notions of federalism and comity counsel that the state system should first make a final determination" of the propriety of its own tax assessments.  *McGhee*, 1998 WL 403329 at *3.

[8] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction over a claim that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3).

however, may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well).

"The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see also Carlsbad Tech., Inc.*, 556 U.S. at 639 ("A district court's decision whether to exercise [subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106,109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away."). Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

### 2. The Court Will Decline to Exercise Supplemental Jurisdiction

Although the Court has unbridled discretion in deciding whether to exercise supplemental jurisdiction in this case, *Carlsbad Tech., Inc.*, 556 U.S. at 639, the United States Court of Appeals for the Fourth Circuit advises that the Court *should* consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110. An evaluation of these four factors uniformly favors dismissal.

18

As to the federal policy factor, none of the remaining counts directly involve federal policy.  All remaining counts allege causes of action under Virginia law.  Next, comity and judicial economy likewise favors dismissal.  Tharpe's remaining claims rely entirely upon Virginia law.  Allowing a state court to address state law matters would best serve judicial economy.

Fairness and convenience to the parties also weigh in favor of the Court declining supplemental jurisdiction. This case remains in an early stage of litigation.  The Court has not decided any disputed state-law-based claims, nor entered any discovery orders.  If the Court declines supplemental jurisdiction, no matters would remain under consideration.  Were Tharpe to subsequently file its defamation claims in a court of appropriate jurisdiction, the parties would essentially begin at the same stage of the litigation process.  Accordingly, the Court's consideration of the convenience to the parties also favors dismissal.

Thus, the Court will dismiss Counts V and VI.

### IV.  Conclusion

For the reasons articulated above, the Court will grant the Motion to Dismiss.  (ECF No. 26.)  The Court will dismiss Plaintiffs' Amended Complaint without prejudice.  (ECF No. 21.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date:  03/14/25
Richmond, Virginia

M. Hannah Lauck
United States District Judge